## Case No. 1,963.

BROOKS et al. v. STOLLEY.

[1 Fish. Pat. Rep. 137;[1] 4 McLean, 275; 4 West. Law J. 412.]

Circuit Court, D. Ohio. Nov., 1846.

EQUITY—PLEADING AND PROOF—PATENTS—LICENSES.

1. In chancery, as at law, the proof must correspond with the allegations in the pleadings.

2. Where a bill to restrain the infringement of letters patent for a planing machine, charged the defendant with using without authority said machine, and the defendant in his answer denies this, and sets up a license from the plaintiff to run such a machine, whereupon the plaintiff does not deny the genuineness of the license, but alleges that the license has become void and been abandoned by reason of certain acts of the defendant, but what these acts are does not appear in the bill: Held, at law, this state of facts would require the plaintiff to plead over and allege in the pleadings the acts of the defendant.

3. A replication to the answer, merely traversing the license, would not lay a foundation for evidence of abandonment, and the same rule governs in chancery.

4. As under the forty-fifth rule of practice for the courts of equity of the United States, no special replication to an answer is allowed, the question whether said licensee had abandoned his license could only be brought before the court by an amendment to the bill.

5. Where the defendant had a license to run either of two planing machines covered by the patent, his right to use a machine of such description can not be made to depend upon the illegality of his sale of those two machines, or the purchase of another. If the purchase by the licensee of another such machine, or his sale of the two, as stated, be a violation of the rights of the licensor, it is not a matter within the license, and can not be made to operate either for or against it.

[Cited in Wortendyke v. White, Case No. 18,050.]

6. Where A. and B. licensed C. "the right of running either of his two machines provided he does not run more than one of them at a time:" Held, such license will always be construed as a license to run a machine, unless in express terms it be limited to the identical machine referred to.

[Cited in Steam Cutter Co. v. Sheldon, Case No. 13,331.]

7. A sale by the patentee of a machine gives an implied right to use it. But such implication does not necessarily follow where the sale of a machine is made by a person who has no exclusive right, but a license merely of use.

8. A license merely of use, being property, may, however, be conveyed.

[See Belding v. Turner, Case No. 1,243, note.]

The present case was a bill in equity [filed by Moses Brooks and Joseph L. Morris against John H. Stolley] to restrain the infringement of letters patent for an improved method of planing, tonguing, and grooving, and cutting into moldings, or either, plank, boards, or other material, and for reducing the same to an equal width and thickness, etc., granted December 27, 1828, to William Woodworth, extended for seven years from

[1] [Reported by William Hubbell Fisher, Esq.]

and after December 27, 1842, in the name of William W. Woodworth, administrator of William Woodworth, deceased, and reissued to said William W. Woodworth, July 8, 1845. [A provisional injunction heretofore provisionally granted (Case No. 1,962) was dissolved, the prayer of the bill for a permanent injunction refused, and a decree entered for complainants for the stipulated rent under the license.]

The plaintiffs, Brooks & Morris, obtained from James G. Wilson, assignee from William W. Woodworth, the exclusive right and license to manufacture machines in accordance with the aforesaid patent, in the county of Hamilton and state of Ohio, and certain other territory, and were also authorized by said Wilson to bring suits for infringement of the patent. The bill charged that the defendant, at the city of Cincinnati, in said county of Hamilton, "unlawfully and wrongfully, and without the plaintiff's consent, and against his will, did make, and did use, the said improvement or machine for planing, tonguing, grooving boards," etc., as aforesaid, and described in the schedule annexed to said letters patent, in violation and in infringement of the exclusive right so secured to the plaintiff by said letters patent and said assignments as aforesaid, and contrary to the statute of the United States in such case made and provided. The defendant in his answer denied the validity of said letters patent, and also set up, by way of defense, a license to him from said Brooks & Morris to operate a machine constructed in accordance with said letters patent. Those parts of the said license material to the present case are as follows:

"Whereas, William Woodworth, now deceased, did, in his lifetime, obtain letters patent issued under the seal of the United States, bearing date December 27, 1828, giving and granting to him, the said William Woodworth, his heirs, administrators, and assigns, for and during the term of fourteen years from the date of said letters patent, the full, exclusive right and liberty of making, using, constructing, and vending to others to be used, a certain improved method for planing, tonguing, grooving and cutting into moldings, or either, plank, boards, or any other material, and for reducing the same to an equal width and thickness, and also for facing and dressing brick and cutting moldings in or facing metallic or other substances; and, whereas, William W. Woodworth, administrator of said William Woodworth, hath applied for and obtained an extension of said letters patent for the term of seven years from and after the expiration of said patent, to wit, December 27, 1842, pursuant to the act of congress in such case made and provided, and hath a certificate of said extension annexed to said patent, signed by the commissioner of patents, under the great seal of the patent office of the United States, and dated the 16th of November, 1842; and, whereas, Moses Brooks and Joseph L. Morris have become the assignees of said right, under the letters patent aforesaid, for the county of Hamilton, in the state of Ohio, and are the exclusive owners thereof; and, whereas, John H. Stolley has two machines constructed according to the specifications in said letters patent, having fully viewed and considered said improvement, and of his own motion has requested and desired said Brooks & Morris to give him a license for using one of his two machines on the said improved plan, in the county of Hamilton aforesaid, and in no other place, on conditions hereinafter mentioned, and has offered to pay said Brooks & Morris the sum of one dollar and twenty-five cents for each and every thousand feet he may plane, payable on every Monday, during the unexpired term of said extended patent, and to plane boards for others than himself for cash only; and to require payment for the same before the boards go out of his possession; and to require such price for planing as shall be agreed on by a majority of the owners of machines running under this patent in said county, said Stolley being one of them, as they shall from time to time determine on; and, whereas, by competition heretofore, the price has been reduced to seventy-five cents per hundred feet, it is agreed not to reduce below that price until agreed on by a majority of the owners as aforesaid, to which request and desire the said Brooks & Morris have agreed to comply: Now, in consideration of the propositions aforesaid, to wit, that the said John H. Stolley shall pay said Brooks & Morris one dollar and twenty-five cents for each and every thousand feet of boards he may plane, payable on Monday of every week during the extended term of said patent, and shall render an account, if required, under oath, and shall keep books in which entries of all boards planed shall be made, and shall give said Brooks & Morris access to said books at all times, and shall plane no boards for any other person than himself for anything but cash, and shall require payment thereof before the boards go out of his possession, the said Brooks & Morris license said Stolley the right of running either of his two machines, provided he does not run more than one of them at a time; and provided, also, he shall keep and perform, on his part, all the stipulations aforesaid. And the said Brooks & Morris having also two machines, and Hughes & Foster having also two other machines, which they wish to run under said letters patent, it is further agreed by the said Brooks & Morris, that they will not run more than their two machines at any one time; nor will they license Hughes & Foster to run more than one of their said machines at any one time; nor will said Brooks & Morris license any additional number of said machines, in the county of Hamilton aforesaid, during said extended term of said letters

patent, nor will they plane boards for other persons than themselves without requiring cash for the same, nor will they plane boards other than their own at less price than shall be fixed by a majority of the owners of said right as aforesaid. It is further agreed that, in case said Brooks & Morris may think proper to bring suits against any persons for infringing the aforesaid patent right, they shall do it at their own cost; and nothing herein shall be so construed as to prevent said Brooks & Morris from receiving from persons infringing said patent, for their own use, such sums as they may think proper to receive, either after suit brought or before, and, in case of such compromise, said Brooks & Morris may grant to such persons license to run, notwithstanding anything herein contained. And it is further agreed, that if said Stolley elect to abandon the running of his machine as aforesaid, or cease for two weeks to run the same, then such neglect to run shall be considered an abandonment on his part, and said Brooks & Morris may consider this contract at an end. Witness our hands and seals, this 11th day of September, 1843, at which day this contract commences—parties each hold a copy hereof. John H. Stolley. (Seal.) Jos. L. Morris. (Seal.) M. Brooks. (Seal.)"

A provisional injunction was granted to the complainants against the defendant. During the suit the complainants assigned all their rights under said license, etc., to James G. Wilson, who thus became interested in the suit. Wilson thereupon made application to be made a party to the suit, but his application was refused. He is, nevertheless, referred to in the opinion of the court as the complainant.

John C. Wright, John L. Miner, Charles L. Telford, and E. P. Norton, for complainants.

Timothy Walker and Charles Fox, for defendants.

McLEAN, Circuit Justice. The complainant in his bill represents that he is the assignee of Woodworth's patented planing machine, renewed and afterward corrected by the administrator; that being in the enjoyment of this valuable patent, in the county of Hamilton and elsewhere, about the month of June, 1846, the defendant, without any legal grant or license, did begin to make, use, and vend to others to be used, the machine aforesaid, and so continues, in violation of the complainant's rights; and he prays for an injunction and for general relief.

In his answer, the defendant admits the emanation, extension, surrender, and renewal of the patent, but requires proof of the complainant's title. He admits that he is running one of Woodworth's machines, under a license from Brooks & Morris, the former owners of the right now asserted by the complainant; and he avers that he has performed all the conditions, on his part, to be performed by the contract of license, except the payment of the money weekly, which he offered to pay frequently, but which was refused by Brooks & Morris, and afterward by the complainant; that he is now ready to pay the same as the court shall direct; and the defendant alleges that the complainant, in several particulars, has violated the contract. Certain affidavits were read to support the bill, and others in support of the answer.

The complainant does not controvert the license set up in the answer, but he insists that the defendant has failed to comply with the conditions on which it was granted and was to be continued; that being bound to keep the machine running, and agreeing that a suspension for two weeks should be considered as an abandonment of the license, he sold the machine, and suspended the use of it more than three months; that the sale of the machine was in itself an abandonment of the license, as the license was limited to the use of one of the two machines owned by the defendant at the time of the contract, both of which he has since sold; and it is contended that the sale of the machine for use conveyed to the purchaser impliedly, if not expressly, his right to run it.

The defendant objects to the ground of abandonment assumed by the complainant, as there is no such issue made by the pleadings, and contends that the complainant must be limited to the case made in the bill. In chancery, as at law, the proof must correspond with the allegations in the pleadings. But the complainant insists that he may show an abandonment of the license, which, if established, would be equivalent to no license, and this would support the allegation of the bill, that the defendant is running the machine without authority. The bill charges the defendant with using the machine without authority; but the defendant denies this, and sets up a license on certain conditions, all of which he alleges have been performed on his part. The genuineness of this instrument is not denied, but the complainant alleges that the contract of license has become void and inoperative by reason of certain acts of the defendant; but what these acts are does not appear in the pleadings. At law there can be no doubt that this state of facts would require the plaintiff to plead over and allege the acts of the defendant, by which the license had been abandoned. The issue, whether of law or fact, would be thus made. But without a proper plea giving notice to the defendant, the facts could not be proved. A replication to the plea, merely traversing the license, would not lay a foundation for evidence of abandonment; and the same rule governs in chancery. The forty-fifth rule of chancery practice declares that "no special replication to any answer shall be filed. But if any matter alleged in the anwer shall make it necessary for the plaintiff to amend his bill,

he may have leave to amend the same." As a special replication is not allowed, the question of abandonment can only be brought before the court by an amendment of the bill.

The license, on the conditions stated, gives to the defendant "the right of running either of his two machines, provided he does not run more than one of them at the same time." As a reference is made in the contract to the two machines owned by the defendant at the time, it is contended that the license can not be construed to extend to any other machine. The license was the result of a compromise between the defendant, who had one of two of Woodworth's machines in operation, and Brooks & Morris, in whom the exclusive right to run those machines in the county of Hamilton was vested; and being in possession of two planing machines, the right to run either was given to the defendant. Does this right extend to any other similar machine? Suppose both of these machines had been destroyed by fire, or in any other manner, could not the defendant have purchased another machine and used it under his license? This, it is believed, is not denied by the complainant. But it is alleged that the defendant sold both of his machines, and having done so, he had no right to purchase another. Now, the right to use the machine can only be made to depend upon the illegality of the sale of the two machines or the purchase of another. Whether the sale was an abandonment of the license can not be now considered, as there is no such averment in the bill; and if the purchase of another machine, or the sale of the two, as stated, be a violation of the rights of the complainant, it is not a matter within the license, and can not be made to operate either for or against it. The contract authorized the defendant to run one of Woodworth's planing machines, and the reference to the two machines then owned by the defendant seems to have been made with the view to give the right to use either, but not both at the same time. Such a license will always be construed to run a machine, unless in express terms it be limited to the identical machine referred to. There is no such limitation in the license to the defendant. Whether there was a transfer of the right under the license, on the sale of one or both of the machines by the defendant, cannot be examined, as there is no such allegation in the bill. The sale of a machine does not necessarily carry the right in this case, as it may have been made to a person who had, or expected to obtain a license. A sale by the patentee of the machine does not give an implied right to use it, as such right is exclusively vested in him and such persons as may have received it from him. But this inference does not necessarily follow where the sale of a machine is made by a person who has no exclusive right, but a license merely of use. So that,

in this latter case, the extent of the transfer must depend upon the facts and circumstances proved. That such a right, being property, may be equitably conveyed, is admitted.

As the main, if not the only object of the bill, is to enjoin the defendant from running the machine he now has, which object can only be reached by showing an abandonment of the license, it is not deemed necessary to inquire whether there is a case made to enjoin the defendant from constructing or vending the machine.

NOTE [from original report]. There was a decree that the defendants should pay the complainants the amount due from the former, on account of rent stipulated to be paid for the use of said planing machine, under said license from the complainants, up to the time when complainants assigned their rights to Wilson; and further, that the injunction against the defendant be dissolved.

[NOTE. During the progress of the suit, complainants assigned their rights as assignees to one Wilson, who filed a bill against the same defendant to enjoin infringement, and thereafter made a motion for a provisional injunction, which was denied. See Wilson v. Stolley, Case No. 17,839. Subsequently he brought an action at law for damages for the same infringement, in which he recovered against defendant. See Id. 17,840. For other cases involving this patent, see note to Bicknell v. Todd, Id. 1,389.]